James MILONAS et al., Plaintiffs,

v.

AMERADA HESS CORPORATION, a
Delaware Corporation,
Defendant.

No. 73 Civ. 4263.

United States District Court,
S. D. New York.

Sept. 25, 1974.

David Berger, Warren D. Mulloy, Bruce K. Cohen, Warren Rubin, Philadelphia, Pa., Harold Brown, Brown & Leighton, Boston, Mass., Frank R. Curtis, Mortimer B. Wolf, Rembar, Wolf & Curtis, New York City, for plaintiffs.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant; Adlai S. Hardin, Jr., Toni C. Lichstein, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

On June 11, 1971, plaintiff Paul Vozzella and defendant Amerada Hess Corporation ("Hess") entered into agreements under which Vozzella became a Hess dealer or franchisee at a gas station located in East Hartford, Connecticut. On October 5, 1973, Vozzella, together with other Hess dealers, instituted this action under sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, seeking injunctive relief and treble damages for injuries sustained by the plaintiffs and all others similarly situated by reason of the defendant's alleged violations of section 1 of the Sherman Act, 15 U.S.C. § 1.

The complaint alleges three causes of action. The first cause of action charges that the Hess dealership agreements involve illegal tying arrangements

under which, among other things, a person may obtain a Hess dealership only if he agrees to sell Hess gasoline exclusively. The second cause of action alleges that the provisions of the Hess dealership agreements permitting Hess to terminate the dealership at any time on thirty days' notice and requiring Hess' prior approval for any transfer of the dealership are unlawful restrictions on the alienability of property. Finally, the third cause of action alleges that the "Dealer's Diners Club Agreement" entered into between Hess and its dealers involves unlawful price fixing. As to this third cause of action, the evidence brought out that the Diners Club arrangement was terminated by Hess in July 1973, effective November 1, 1973.

In January, 1974, after this action was commenced, Hess became aware that Vozzella was charging the public approximately $.03 more per gallon of gasoline than the maximum retail price permissible under the Federal Economic Stabilization Act of 1970, 12 U.S.C.A. § 1904 n., and the regulations of the Cost of Living Council issued pursuant thereto. One Hess employee testified that on or about January 22, 1974 he advised Vozzella that his prices appeared to exceed the legal maximum, but that Vozzella's price violation continued. In late February, Hess called the matter to the attention of the Internal Revenue Service. By letter dated April 23, 1974, the Internal Revenue Service confirmed to Hess that Vozzella had been charging prices in excess of those permitted by law and that Vozzella had agreed to roll back his allowable price by $.03 per gallon until $22,057.54, representing unlawful overcharges, had been refunded to the public. Following receipt of the letter from the Internal Revenue Service, Hess hand-delivered to Vozzella, on April 30, 1974, a letter terminating Vozzella's dealership agreements in accordance with their terms, effective June 30, 1974.

On June 28, 1974 Vozzella moved for a preliminary injunction enjoining Hess from terminating his dealership. Hear-ings were held on July 17, 1974 and August 27, 1974, at which Vozzella and the other plaintiffs testified, as well as employees of Hess. At the conclusion of the hearing on August 27, the Court was advised that Vozzella would not be evicted from his Hess station until his motion for a preliminary injunction had been determined.

Vozzella contends that his termination was in retaliation for the bringing of this lawsuit. Hess, on the other hand, contends that Vozzella was terminated solely for "price gouging" in violation of the Federal Economic Stabilization Act of 1970 and the Cost of Living Council regulations issued pursuant thereto, and that there is no causal relationship between Vozzella's termination and the violations of the antitrust laws charged in the complaint.

Pursuant to the regulations of the Cost of Living Council issued on October 31, 1973, the ceiling price permitted for retail gasoline sales as of November 1 was the price at which the gasoline was sold on May 15, 1973 "plus an amount which reflects on a dollar-for-dollar basis, increased costs of the item." Cost of Living Council Phase IV Price Regulations § 150.359, 38 Fed.Reg. 30271 (1973). As of January 1, 1974 a gasoline dealer was permitted to increase his ceiling price by $.01 per gallon. Cost of Living Council Phase IV Price Regulations § 212.93, 39 Fed.Reg. 1959 (1974).

Vozzella testified that in November, 1973 he was receiving from Hess only 85% of the gasoline which he had received during the same period in 1972. As a result, he testified that he interpreted the regulations to mean that he could charge a price which would yield him the same profit that he had received in 1972. However, Vozzella's formula resulted in his charging customers approximately $.03 per gallon more than the legal maximum, and his total overcharges exceeded $22,000. Vozzella testified that upon being notified by the Internal Revenue Service that his ceiling price formula was improper, he rolled back his prices and refunded to the pub-

lic the amount of his overcharges. In light of Vozzella's educational background and obvious intelligence, it is difficult for the Court to understand how Vozzella was unable to make the simple calculations required by the Cost of Living Council regulations referred to above.

Wayne Moody, Hess' operations manager, testified that Hess has a policy of terminating any dealer who after being warned that his prices may be too high, continues to charge prices which exceed the legal maximum by $.02 per gallon or more. According to Moody, termination is made after confirmation of the violation by the Internal Revenue Service and regardless of whether the dealer has agreed to refund the overcharges. Moody also testified that the purpose of Hess' policy with regard to "price gouging" is to safeguard the integrity of the Hess trade name, and to protect the public and the other Hess dealers. Lee Wenzel, a Hess field representative, testified that between January 15 and the date when the fuel allocation ended, he received far more customer complaints about pricing at Vozzella's station than at other Hess stations. In addition, Wenzel testified that he received complaints about Vozzella's pricing from two other Hess dealers.

Pursuant to Hess' "price gouging" policy, three dealers, including Vozzella, had been terminated as of the hearing date. The other two dealers had total overcharges in the range of $4500 and $4600 as compared to Vozzella's total overcharges of more than $22,000. Both of the other dealers sought preliminary injunctions to prevent their termination and in each case a preliminary injunction was denied. Montesani v. Amerada Hess Corp., Dkt. Nos. 74–95–JE, 74–750–Civ–JE (S.D.Fla. July 19, 1974); Melograno v. Amerada Hess Corp., Dkt. No. C–1655–73 (Superior Ct.N.J. March 4, 1974). In *Montesani*, the Court held that the standards required by the law of the Fifth Circuit for the issuance of a preliminary injunction had not been met. The Court in *Melograno* found

that a $.07 to $.09 per gallon overcharge over a four-day period constituted "good cause" for termination under the Hess dealership agreements and the New Jersey Franchise Practices Act, N.J.S.A. 56:10–1 et seq. (Supp.1973–1974), regardless of the good faith of the dealer.

Moody also testified that in addition to this lawsuit, two other antitrust suits are presently pending against Hess in other districts. Of the sixteen dealer plaintiffs in the three actions, four, according to Moody, have been terminated, two prior to the commencement of the actions in which they are plaintiffs.

The other plaintiffs in this action, James Milonas, Nicholas Milonas, Castoe, and Long, testified at the hearing, but their testimony was unconvincing on the question of whether Hess had embarked on a course of retaliation against them. Indeed, Nicholas Milonas testified that Hess' treatment of him has improved since he became a plaintiff in the lawsuit. On cross-examination, Arthur Watkins, a Hess employee, testified that he once told Vozzella that "since you have seen fit to let us spend some money over your legal actions, now you can spend some." However; this portion of Watkins' testimony is insufficient to establish Vozzella's contention that he was terminated in retaliation for his participation in this action.

█ Preliminary injunctions have been granted in antitrust cases to prevent the termination of a plaintiff's franchise. *See* Milsen Co. v. Southland Corp., 454 F.2d 363 (7th Cir. 1971); Lepore v. New York News, Inc., 346 F. Supp. 755 (S.D.N.Y.1972). In such cases the courts have recognized the public interest in encouraging enforcement of the antitrust laws by private parties and the need of such parties, as Vozzella here, to continue in business during the course of the litigation. *Milsen, supra,* 454 F.2d at 366–367. Involved in the present case, however, is the equally important public interest in being protected against unwarranted price increases in violation of the Economic Stabilization Act. The safeguards afforded liti-

gants by the antitrust laws cannot be used to condone conduct which violates the Economic Stabilization Act. Moreover, in order for the termination here to be unlawful, there must be some causal connection between the alleged antitrust violations and the refusal to deal. Interphoto Corp. v. Minolta Corp., 295 F.Supp. 711, 721 (S.D.N.Y.1969), aff'd, 417 F.2d 621 (2d Cir. 1969). Once a causal connection is established, the Court must then weigh the criteria for issuing a preliminary injunction: 1) probable success on the merits and possible irreparable injury, or 2) sufficiently serious questions going to the merits to make then a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See* Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247, 250 (2d Cir. 1973); Columbia Pictures Industries, Inc. v. American Broadcasting Co., 501 F.2d 894 (2d Cir. 1974); Gresham v. Chambers, 501 F.2d 687 (2d Cir. 1974).

■ Vozzella has failed to show that there is any connection between his termination and the antitrust violations alleged in the complaint, or that Hess terminated his dealership in retaliation for his bringing this suit. Moreover, Vozzella does not dispute that his prices for gasoline during the period November, 1973 through the beginning of March, 1974 were in violation of the Federal Economic Stabilization Act and the Cost of Living Council regulations issued pursuant thereto, or that such violation gave Hess a contractual right to terminate his dealership. In view of the foregoing, this Court cannot in its discretion grant Vozzella the preliminary injunction which he seeks. However, as a plaintiff in this lawsuit, Vozzella will still be able to recover any damages caused him by Hess' alleged violations of the antitrust laws.

Vozzella's motion for a preliminary injunction is denied. Hess is stayed until five days after the date the order is filed herein from evicting Vozzella in or-der that he may seek relief in the Court of Appeals.

The foregoing constitutes the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

Settle order on notice.