UNITED STATES of America, Plaintiff,

v.

TRACINDA INVESTMENT CORPORATION and Kirk Kerkorian, Defendants.

Civ. A. No. 79–0174–AAH(Sx).

United States District Court, C. D. California.

Jan. 26, 1979.

Alan L. Marx, Dennis C. Cuneo, Robert J. Rose, and Barbara A. Reeves, Los Angeles, Cal., for plaintiff and moving party.

Wyman, Bautzer, Rothman & Kuchel by Frank Rothman, Thomas H. Kuchel, Terry N. Christensen, Stephen Silbert and George Miron, Los Angeles, Cal., for defendants and responding parties, Tracinda Inv. Corp. and Kirk Kerkorian.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

### *INTRODUCTION*

The complaint in this action, alleging a violation of section 7 of the Clayton Act, 15 U.S.C. § 18, was filed on January 15, 1979, in the United States District Court for the Central District of California. Also on January 15, 1979, plaintiff filed its application for temporary restraining order and motion for preliminary injunction. Plaintiff's application for temporary restraining order and motion for preliminary injunction were heard by the above-entitled court on January 15, 1979, the Honorable A. Andrew Hauk presiding.

By its application and motion, plaintiff seeks a temporary restraining order and preliminary injunction against defendants Tracinda Investment Corporation ("Tracinda") and Kirk Kerkorian ("Kerkorian"), ostensibly to prevent an acquisition of stock which allegedly would tend to lessen competition substantially or tend to create a monopoly in interstate trade and commerce. In substance, plaintiff contends that defendants Tracinda and Kerkorian have violated section 7 of the Clayton Act, by instituting a tender offer for approximately nineteen per cent (19%) of the common stock of Columbia Pictures Industries, Inc. ("Columbia"). By the application and motion, plaintiff prays for a temporary restraining order and a preliminary injunction preventing and restraining the defendants Tracinda and Kerkorian and all persons acting on their behalf from taking any action,

directly or indirectly, in furtherance of the aforesaid tender offer, or taking any other action to acquire any part of the stock or assets of Columbia.

Pursuant to the order denying plaintiff's application for temporary restraining order and motion for preliminary injunction filed concurrently herewith, the court hereby makes and adopts the following findings of fact and conclusions of law, in accordance with Rule 52(a), F.R.C.P.

## FINDINGS OF FACT

### A. Background

1. Tracinda is a corporation organized and existing under the laws of the State of Nevada, with its principal office located at 4045 South Spencer Street, Suite 202, Las Vegas, Nevada. Tracinda is an investment company which owns various property, including approximately 42% of Metro-Goldwyn-Mayer's ("MGM's") outstanding common stock.

2. Kerkorian owns 100% of the voting shares of Tracinda and is its only director. In addition to the MGM shares owned by Tracinda, Kerkorian personally owns approximately six per cent (6%) of MGM's outstanding common stock. Kerkorian, individually and through Tracinda, owns approximately 48% of MGM's common stock and is its controlling shareholder.

3. Columbia is a corporation organized and existing under the laws of the State of Delaware and maintains its principal executive office in New York, New York.

4. MGM is a corporation organized and existing under the laws of the State of Delaware and maintains its principal executive office in Culver City, California.

### B. The Tender Offer

5. On or about December 26, 1978, Tracinda commenced its tender offer for approximately 1,750,000 shares of the common stock of Columbia, representing approximately nineteen per cent (19%) of Columbia's outstanding common stock. The tender offer was scheduled to be consummated on or about January 16, 1979.

6. As of November 17, 1978, Kerkorian owned 490,700 shares of the common stock of Columbia, representing approximately five per cent (5%) of Columbia's outstanding common stock. If the instant tender offer were successful, Kerkorian, individually and through Tracinda, would own approximately 24% of Columbia's outstanding common stock.

7. On November 20, 1978, Tracinda announced its intention to make a tender offer for approximately 19% of the common stock of Columbia. On November 21, 1978, Tracinda notified the Department of Justice of its intention to make such tender offer. During the entire period of time from November 21, 1978 through December 26, 1978, when the tender offer period commenced, the Department never suggested or commented informally or formally that Tracinda should not go forward with the subject tender offer. Not until January 12, 1979, almost two months after the time the Department of Justice learned of defendants' intent and four days before the tender offer was to close, did the Department of Justice notify the defendants of its opposition to the tender offer.

### C. The Columbia Agreement

8. Defendants' intent to acquire Columbia shares for investment only is manifested in an agreement of December 14, 1978, with Columbia. In that agreement, Tracinda and Kerkorian represented and agreed that Tracinda's purchase of Columbia common stock was for investment purposes only and not with a view toward exercising control over Columbia or merging or otherwise combining Columbia with any other entity. In the same agreement, Tracinda and Kerkorian agreed to vote all their shares for board nominees in the same proportion as all other votes cast; the effect of the agreement is that defendants' votes will not be counted in electing directors. Moreover, under this agreement, defendants have no right to acquire any competitively sensitive information from Columbia, and Columbia has the right to decide whether information

is competitively sensitive. Furthermore, the agreement precludes defendants from seeking additional shares of Columbia.

9. Plaintiff has completely failed to rebut defendants' showing that their intent is to purchase the Columbia shares for investment only, and not for purposes of controlling Columbia, or for acquiring any competitively sensitive information, or for any anti-competitive purpose.

### D. *Line of Commerce*

10. In its complaint, plaintiff has alleged only one relevant line of commerce, namely: "The Production and Distribution of Feature Length Theatrical Films." Plaintiff has defined that alleged line of commerce as follows:

"Production and distribution of motion pictures involves a cluster of activities that takes an initial concept and turns it into a motion picture viewed by theatrical audiences. Some of these activities are arranging financing, developing a script, obtaining the services of a producer, director, actors and other technical and creative people, filming the various scenes, developing and editing the film, distributing the film to theatres and arranging the advertising and promotion of the motion picture."

11. Plaintiff has failed to show that MGM and Columbia compete in the line of commerce it alleges in the complaint.

12. The government has failed to show that MGM and Columbia compete in the distribution of motion pictures. Indeed, the government concedes that MGM does not offer the service of theatrical film distribution.

13. Plaintiff has failed to show the identity or number of firms which, at any time, offer or offered the "cluster of services" alleged to constitute the line of commerce.

14. Plaintiff has failed to show the total dollar volume of sales, revenues or income, at any time, of the firms which might offer or have offered the cluster of services alleged to constitute the line of commerce.

15. Plaintiff has failed to support its allegation that the supplying of sound stages is one of the services which is part of the "cluster of services" constituting the alleged line of commerce.

16. Plaintiff has failed to support its allegation that data as to gross film rentals is a reasonable measure of the size of the line of commerce.

17. Plaintiff has failed to support its allegation that firms which offer only part of the "cluster of services" constituting the alleged line of commerce must be ignored in determining the competitive effect, if any, of the stock acquisition at issue.

18. Plaintiff has failed to support its allegation that the rentals of feature films which gross less than one million dollars each should be excluded from computation of total gross film rentals.

19. Plaintiff has made no showing that the stock acquisition would have an adverse competitive effect in any line of commerce.

20. Plaintiff has not shown that motion picture production and distribution is a "cluster of services" which constitutes a line of commerce.

21. Plaintiff has failed to show MGM's or Columbia's share of the line of commerce alleged in the complaint.

22. Plaintiff has failed to show that a combination of MGM and Columbia would constitute a substantial share of any line of commerce, assuming, *arguendo*, that such a combination were to take place. Plaintiff has failed to show, by any means, that such a combination will take place.

23. Plaintiff has failed to show that MGM or Columbia is a significant competitive factor in the line of commerce alleged. Further, plaintiff has not shown that existing or potential competition in any way would be diminished in the line of commerce alleged, even assuming, *arguendo*, those companies were to be combined, and plaintiff has failed to show that any such combination will take place.

24. Plaintiff has failed to show that the proposed instant stock acquisition is a merger or other combination of Columbia and MGM.

### E. Lack of Harm to Plaintiff and the Public

25. Plaintiff has failed completely to rebut defendants' showing that under the December 14, 1978 agreement, the defendants exercise no effective influence or control over Columbia.

26. Plaintiff has failed to show how it would be harmed if the tender offer were to be consummated.

27. Plaintiff has not shown any harm to the public if the tender offer were to be consummated.

### F. Harm to Defendants

28. The defendants would be harmed irreparably if the tender offer were restrained, because the shareholders of Columbia would be confused and deterred from tendering shares. The offer might thereby be permanently frustrated.

29. The defendants would be harmed irreparably if the tender offer were restrained, because, during a period that could amount to several years, there could be volatile changes in stock market conditions which would deter shareholders from tendering their shares.

30. If the tender offer were restrained or enjoined, defendants would lose irretrievably more than $200,000 (in addition to their attorneys' fees) which they have spent in preparing the tender offer, after having advised the Department of Justice of their intentions on November 21, 1978, following which date the defendants received no adverse word from the Department of Justice until January 12, 1979.

31. If the tender offer were restrained or enjoined, another offeror could appear, make a similar offer, and take advantage of defendants' business acuity in perceiving that a minority stock position in Columbia was, at the offer price, an attractive investment opportunity.

### G. Conclusion

32. Plaintiff has not shown the existence of any relevant line of commerce or market.

33. Plaintiff has not shown that the effect of the stock acquisition may be substantially to lessen competition, or to tend to create a monopoly, in any line of commerce in any section of the United States.

34. Plaintiff has failed to show that either it or the public would be harmed in any way by the court's refusal to grant temporary equitable relief as requested by plaintiff.

35. The defendants have shown that they would be harmed irreparably if the tender offer were restrained or enjoined.

36. The balance of hardships tips sharply in favor of the defendants.

37. To the extent the context may warrant, the within findings of fact shall serve as conclusions of law.

### CONCLUSIONS OF LAW

### A. Jurisdiction and Relief Sought

1. This court has jurisdiction over this action by virtue of section 15 of the Clayton Act, as amended (15 U.S.C. § 25), which authorizes suits by the plaintiff to enforce section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

2. By the instant application and motion, plaintiff seeks a temporary restraining order and a preliminary injunction, precluding the defendants from taking any action, directly or indirectly, in furtherance of the aforesaid tender offer, or taking any other action to acquire any part of the stock or assets of Columbia.

### B. The Line of Commerce

3. By its alleged "cluster of services" theory, the plaintiff has failed to show a line of commerce or market. *See United States v. Gimbel Brothers, Inc.*, 202 F.Supp. 779, 780 (E.D.Wis.1962).

4. Plaintiff has failed to show that motion picture distribution rentals are a reasonable measure of competition in any line of commerce.

5. Plaintiff has completely failed to rebut the defendants' showing that the stock

acquisition is permissible and lawful under the Department of Justice's own Merger Guidelines. *See* CCH Trade Reg. Rptr. ¶ 4510 at 6884 (providing that a transaction ordinarily will not be challenged if one firm has less than a 3% market share, unless the other firm has a 20% share or more). Moreover, plaintiff has failed to show that by this stock acquisition there will be any merger or combination of any firms, including Columbia and MGM.

### C. *Section 7 of the Clayton Act*

■ 6. Plaintiff has failed to support its allegation of a market or line of commerce sufficient to establish a violation of section 7 of the Clayton Act, 15 U.S.C. § 18. *United States v. Gimbel Brothers, Inc., supra.*

7. Plaintiff has failed to show that the stock acquisition is a merger or other combination of MGM and Columbia violative of section 7 of the Clayton Act, 15 U.S.C. § 18. *See United States v. General Dynamics Corp.,* 415 U.S. 486, 94 S.Ct. 1186, 39 L.Ed.2d 530 (1974).

8. Plaintiff has failed to show that the effect of consummation of the tender offer may be substantially to lessen competition, or to tend to create a monopoly, in any line of commerce in any section of the United States. *See United States v. General Dynamics, Corp., supra.*

9. Plaintiff has failed to rebut the showing made by defendants, through (among other things) their agreement of December 14, 1978 with Columbia, that the stock acquisition is solely for the purpose of investment, and that said stock will not be used by voting or otherwise to bring about, or attempt to bring about, the substantial lessening of competition. Accordingly, plaintiff has failed to rebut defendants' showing that this stock acquisition falls within the "investment exception" to section 7 of the Clayton Act, 15 U.S.C. § 18. *See Anaconda Co. v. Crane Co.,* 411 F.Supp. 1210, 1218–1219 (S.D.N.Y.1975). Therefore, plaintiff has failed to rebut defendants' demonstration that said acquisition is lawful.

### D. *Legal Standards For Temporary Equitable Relief*

10. With respect to a temporary restraining order, the court may grant such relief "as shall be deemed just in the premises." 15 U.S.C. § 25.

■ 11. One test for determining whether to issue a preliminary injunction is set forth in *United States v. International Telephone & Telegraph Corp.,* 306 F.Supp. 766, 769 (D.Conn.1969). This case holds that in order to obtain a preliminary injunction, the plaintiff must show (i) a reasonable probability of success in proving its case on the merits upon a final hearing, and (ii) that the alleged injury to the public interest resulting from denial of a preliminary injunction outweighs the alleged injury to the defendants resulting from the granting of a preliminary injunction. The plaintiff has not met this test.

■ 12. The test relied upon by plaintiff at the hearing on its motion is set forth in *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.,* 526 F.2d 86 (9th Cir. 1975). In that case, the court quoted from *Charlie's Girls, Inc., v. Revlon, Inc.,* 483 F.2d 953, 954 (2d Cir. 1973) in stating that: " 'One moving for a preliminary injunction assumes the burden of demonstrating *either* a combination of probable success and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor' " (emphasis added by the *Inglis* court). *See also Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973). The plaintiff also failed to meet its burden with respect to this alternative test and has an adequate remedy available by way of divestiture if able to show at trial on the merits a violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

### E. *Equitable Relief*

13. Plaintiff has failed to meet its burden of showing a reasonable probability of success in proving its case on the merits upon a final hearing.

14. Plaintiff has failed to meet its burden of showing that the alleged injury to the public interest resulting from denial of injunctive relief outweighs the alleged injury to the defendants resulting from granting such relief.

15. Plaintiff has failed to meet its burden of showing that serious questions are raised and that the balance of hardships tips sharply in its favor. In fact, the balance of hardships tips sharply in favor of the defendants.

16. The court finds that the defendants will sustain irreparable injury if the temporary equitable relief requested by plaintiff is granted, whereas plaintiff (and the public) will sustain no injury at all if such relief is denied.

17. The court finds that it would not be in the public interest, and would not serve to enhance competition or avoid lessening competition, to grant temporary equitable relief.

18. Plaintiff has not shown that immediate equitable relief is necessary in order to preserve the *status quo*.

19. Plaintiff has failed to show that temporary equitable relief would be "just in the premises" as required by 15 U.S.C. § 25.

F. *Conclusion*

20. The Court's order of January 26, 1979, filed concurrently herewith, denying plaintiff's application for a temporary restraining order and motion for a preliminary injunction, shall be incorporated herein by reference and made a part of these findings of fact and conclusions of law.

21. To the extent the context may warrant, the within conclusions of law shall serve as findings of fact.