The NEW YORK TIMES COMPANY, a New York Corporation, Plaintiff,

v.

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, Douglas La Chance, Individually and as President of the Newspaper and Mail Deliverers' Union, Lawrence May, Individually and as Vice President of the Newspaper and Mail Deliverers' Union, Monte Rosenberg and Jack Wolfson, Individually and as Business Agents of the Newspaper and Mail Deliverers' Union, Murray Schwartz, Individually and as Secretary Treasurer of the Newspaper and Mail Deliverers' Union, Bernard Weisner, Individually and as Chapel Chairman of the Newspaper and Mail Deliverers' Union; and Theodore Kavowras, Individually and as Assistant Chapel Chairman of the Newspaper and Mail Deliverers' Union, Defendants.

No. 79 Civ. 448.

United States District Court, S. D. New York.

Feb. 5, 1979.

Cahill, Gordon & Reindel, John J. Stanton, Jr., Gen. Atty., Russell Lewis, Staff Atty., New York City, for plaintiff, by Joel C. Balsam, Charles A. Gilman, New York City, of counsel.

Shea, Gould, Climenko & Casey, New York City, for defendants, by Marshal Lippman, New York City, of counsel.

## OPINION

SWEET, District Judge.

This action results from a dispute between the New York Times Company ("Times") and the Newspaper and Mail Deliverers' Union of New York and Vicinity (the "NMDU") arising out of the manning on the presses in the Times' Carlstadt, New Jersey facility. Prior to January 21, 1979 the conveyor belt on the presses at the Carlstadt facility was manned by no less

than four employees. Carlstadt was used for the production of various advance sections of the Times' Sunday edition, but not for the production of daily papers, which was done at the Times' facility at 43rd Street in Manhattan. On January 22, 1979, the Times attempted to initiate production of daily papers, with reduced manning, at the Carlstadt presses. NMDU considered such reduction in manning a breach of its collective bargaining agreement with the Times. On the evening of January 22, 1979 Herbert Haber, who had in the past served as Impartial Chairman of the Appeals Board, reviewed the situation at Carlstadt and issued an interim arbitration award, the validity of which is in dispute, directing that the NMDU continue working with one man on each conveyor belt. The NMDU refused and engaged in a work stoppage which has continued to date.

On January 23, 1979 the Times commenced an action in the Supreme Court of the State of New York, County of New York seeking, *inter alia,* preliminary injunctive relief enjoining NMDU from continuing its strike at the Carlstadt facility. On January 25, 1979 Justice Oliver C. Sutton issued an order enjoining the NMDU from interrupting normal production and distribution of the New York Times, from violating the no-strike clause of the collective bargaining agreement and from violating the interim arbitration award issued by Herbert Haber. On January 26, 1979 the Supreme Court action was removed to this court pursuant to 28 U.S.C. § 1441.

On January 29, 1979 this court signed an order directing that on February 2, 1979 the NMDU show cause before this court why an order should not be issued enjoining the NMDU from engaging in a work stoppage at Carlstadt and directing the NMDU to proceed to arbitration with respect to the manning dispute.[1] On February 2, 1979

argument was had; this court's determination is embodied herein.

The respective rights of the parties arise out of a collective bargaining agreement (the "Agreement") entered into on November 3, 1978, with an effective date as of March 31, 1978. The Agreement consists of the collective bargaining agreement between the Times and the NMDU entered into in 1975, together with certain changes thereto. The Agreement left certain matters unresolved, some of which were dealt with in a signed letter agreement (the "Letter Agreement") dated November 3, 1978. The Times does not dispute the validity of the Letter Agreement. The differences between the parties arise out of conflicting interpretations of the Agreement and the effect of the Letter Agreement thereon.

Paragraphs 16–M.3 and 16–M.4 of the Agreement provide as follows:

16–M.3. With the exception of a layoff, as hereinbefore provided in Section 3–D, and except in case of discharge of employees, no change in condition shall be put in effect by either party to this contract without the prior consent of the other. In the event that such change is placed in effect, either party may file formal written demand for a hearing before the Appeals Board without resort to the Joint Standing Committee and said Appeals Board shall be convened immediately and hear and determine the issue within two (2) weeks from the date of the filing of such demand.

16–M.4. In the event a change shall have been made and shall have been in effect for a period of more than thirty (30) days, then the change may be continued in effect pending a determination by the Appeals Board. If the change has not been in effect for more than thirty (30) days, the Union, immediately after filing a written notice, may request the

---

1. The Times also sought an order holding NMDU in contempt for intentionally violating the order of Justice Sutton. However, at oral argument before this court counsel for the Times was understood to seek only a fine or some other remedy in the event NMDU continued its alleged violation of the order. Since the

order by Justice Sutton expires this date, such request has effectively been mooted. In the event this court issues an order similarly restraining NMDU and such order is violated, this court will entertain any appropriate motions.

chairman designated to serve on the Appeals Board to direct the Publisher who has made the change to discontinue it and to restore the prior existing conditions pending a full hearing by the Appeals Board and its determination, and the Publisher upon receipt of such notice from the chairman shall thereupon immediately restore the prior existing conditions.

Under these provisions, it appears that there was no duty on the Times to proceed to arbitration prior to instituting the change despite the precatory language of the first sentence of 16–M.3. Once instituted, it was incumbent upon NMDU to seek arbitration in the event it objected to the change.

NMDU asserts that the Letter Agreement precludes the Times from making the change in manning at Carlstadt. The Letter Agreement provides:

It is hereby mutually agreed:

\* \* \* \* \* \*

(4) The manning on presses in Carlstadt facility shall remain the same pending a meeting that may be requested by either side.

The Times, on the other hand, asserts that any dispute arising out of the Letter Agreement is itself arbitrable pursuant to the Agreement, which provides, in pertinent part, as follows:

16–A. All grievances, differences and disputes arising out of the interpretation or application of this agreement which cannot be settled at the plant level are to be referred, as hereinafter provided, to the Joint Standing Committee and/or the Appeals Board for adjudication.

\* \* \* \* \* \*

16–D. In the event that the Joint Standing Committee is unable to resolve the issue, or fails to act within two (2) weeks

after submission, the matter shall then be automatically referred to the Appeals Board which shall consist of the four (4) members of the Joint Standing Committee and a chairman who shall be selected in accordance with the procedure hereinafter set forth.

■ If the Letter Agreement is part of the Agreement, as the NMDU asserts, then there is nothing in it to indicate that in the event the parties are unable to agree at the meeting with respect to the manning at Carlstadt, that such dispute would not be subject to the arbitration provisions of the Agreement or that the Letter Agreement was to provide an arbitration or grievance procedure outside the Agreement.[2] Such an interpretation is consistent with the federal policy in favor of arbitration of labor disputes (*See Gateway Coal Co. v. United Mineworkers of America*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974)) and accepted by this court.

The aforementioned provisions of the Agreement require arbitration once a dispute, difference or grievance arises. Here, the grievance, difference or dispute arises as a result of the alleged failure of the Times to request a meeting or from its change in the manning at Carlstadt without the agreement or consent of the NMDU. The issue before this court is not whether the Times violated the Letter Agreement, but whether a dispute arising from such claim is arbitrable. As set forth above, this court concludes that arbitration is the appropriate vehicle in this instance. Therefore, if the NMDU believes the Times did not attempt to discuss the change and therefore violated the Letter Agreement, and/or it wishes to object to the propriety of the change on the merits, its appropriate remedy is to seek redress of such grievance through arbitration, not a work stoppage.

2. The Letter Agreement does not replace the Agreement or the intention of the parties set forth in paragraphs 16–A and 16–D, as the NMDU would have this court hold. It does not annul the arbitration provisions or make arbitration a prerequisite to a change in manning, but only makes a meeting between the parties such a prerequisite; nor does it make arbitration a prerequisite in the event the parties are unable to agree at a meeting on a proposed manning change. If the intention of the parties was to provide that an alleged violation of the Letter Agreement was not subject to the arbitration provisions or that the Letter Agreement required arbitration prior to any manning change, they could have specifically provided such. This they did not do.

The NMDU is hereby directed to proceed to arbitration on any such grievances and disputes with the Times in accordance with the provisions of the Agreement. Labor Management Relations Act § 301, 29 U.S.C. § 185; *International Association of Machinists and Aerospace Workers v. General Electric Company,* 406 F.2d 1046 (2d Cir. 1969). In the event the parties are unable to agree upon an Impartial Chairman as provided in the Agreement, this court will retain jurisdiction to appoint one should either party apply to this court for such relief. *See* 9 U.S.C. § 5.[3]

Having determined that arbitration is appropriate under these circumstances, the court must now address the Times' request for a preliminary injunction enjoining any continued work stoppage pending the outcome of arbitration. The Agreement, in pertinent part, provides:

No Strike, No Lockout

16–N. No strike, lockout or other cessation of work or interference therewith shall be ordered or sanctioned by any party hereto during the term hereof except as against the party failing to comply with a decision, award or order of the Joint Standing Committee, the Adjustment Board or the Appeals Board.

*Boys Market v. Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1969) sets forth the criteria which must be satisfied for this court to enforce this provision:

A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the

District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance. *[Sinclair Refining Co. v. Atkinson],* 370 U.S., [195] at 228, [82 S.Ct. at 1346, 8 L.Ed.2d 440].

*Id.* at 254, 90 S.Ct. at 1594. Pursuant to this test and that set forth by the Second Circuit in *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973), this court holds, as set forth above, that the grievance as to the manning at Carlstadt is one that both parties are contractually bound to arbitrate, and that breaches of the work stoppage provision have occurred and that they will continue absent a direction from this court to do otherwise. The more difficult questions are whether the Times will suffer more from a denial of an injunction than will the NMDU from its issuance and whether the Times has satisfied its burden that the work stoppage will cause it irreparable injury.

As to the first question, absent the issuance of an injunction the Times will suffer monetary damages and possible loss in circulation. The exact extent of the harm to the Times must await a hearing on the issue of irreparable injury (*See* discussion infra.). The NMDU on the other hand as-

3. 9 U.S.C. § 5 provides as follows:

Appointment of Arbitrators or Umpire

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

serts no general injury as a result of the issuance of an injunction, other than the obvious loss of strength in bargaining resulting from the work stoppage. Such advantage is not appropriate here where arbitration of the issue has been determined to be appropriate. However, in the May affidavit in opposition to the motion there is an assertion that the placing of one employee at a conveyor at Carlstadt creates a danger to the employees. The validity and effect of such a claim must await a hearing on the issue.

As to the question of irreparable injury, the NMDU contends that the Times is obligated to avoid, or mitigate, the injury from the work stoppage by withdrawing the objectionable practice pending the outcome of negotiation on the manning and that the only injury from doing such would be a cost of less than $180 per day. The Times, on the other hand, asserts that this court can only view the irreparable injury resulting from the work stoppage.

 If the NMDU's position is accepted, any time the NMDU disagreed with a decision by the Times, it could effectively prohibit, pending arbitration, the institution of the change by simply engaging in a work stoppage. As long as the inability to institute the change did not irreparably harm the Times, an injunction could not issue. This result would be to eviscerate the no-strike provision and make conducting the affairs of a multi-million dollar business such as the Times almost unmanageable. Therefore, this court holds that the principles of equity, interpreted in light of the federal policy in favor of arbitration, require that under the circumstances the issue of irreparable injury be viewed with respect to the result of the unauthorized practice (the strike), not the cause of it. The extent of the injury to the Times resulting from the strike is an issue which can only be resolved, in this instance, after an evidentiary hearing on the subject.

Based upon all of the foregoing, the parties are directed to proceed to arbitration on any disputes arising out of the manning at the Carlstadt facility. An evidentiary hearing will be held by this court on the issues left unresolved by this opinion with respect to the issuance of a preliminary injunction. This constitutes this court's findings of fact and conclusions of law insofar as applicable. Submit order on notice.

IT IS SO ORDERED.