**DELAWARE RIVER PORT AUTHORITY, Appellant,**

v.

**Norbert T. TIEMANN, as Administrator, Federal Highway Administration and William T. Coleman, Jr., as Secretary, United States Department of Transportation and City of Philadelphia, Defendant-Intervenor.**

No. 75–2328.

United States Court of Appeals, Third Circuit.

Argued Feb. 5, 1976.

Decided March 10, 1976.

Roland Morris, Sp. Pennsylvania Counsel to the Delaware River Port Authority, Duane, Morris, & Heckscher, Philadelphia, Pa., Alexander Feinberg, New Jersey Counsel, Cherry Hill, N. J., Victor Wright, Pennsylvania Counsel, Philadelphia, Pa., John E.

Yeomans, Resident Counsel, Camden, N. J., for appellant.

Sheldon L. Albert, City Sol., Stephen Arinson, Chief Deputy City Sol., Raymond Kitty, Deputy in charge of Litigation, Herbert Smolen, Deputy City Sol., Louis F. Hinmann, III, Asst. City Sol., Philadelphia, Pa., for intervenor-appellee, City of Philadelphia.

Peter R. Taft, Asst. Atty. Gen., Edmund B. Clark, Raymond N. Zagone, Kathryn A. Oberly, Attys., Dept. of Justice, Washington, D.C.; Dowell H. Anders, Deputy Chief Counsel, Federal Highway Administration, U.S. Dept. of Transp., Washington, D.C., of counsel.

Before SEITZ, Chief Judge, and VAN DUSEN and WEIS, Circuit Judges.

### OPINION OF THE COURT

SEITZ, Chief Judge.

This is an appeal by plaintiff, the Delaware River Port Authority ("Authority"), from an order of the district court granting defendants' motion for summary judgment and sustaining an order of the Federal Highway Administrator ("Administrator") reducing the tolls which plaintiff charges on its bridges.

The Authority, created pursuant to an interstate compact between Pennsylvania and New Jersey, operates toll bridges spanning the Delaware River, a high speed rail commuter line ("PATCO"), and in addition, maintains a World Trade Division to promote the Port of Philadelphia. In April, 1972, the Authority announced an increase in bridge tolls in order to obtain needed revenue to finance the construction of 2 new bridges. The toll increase prompted numerous complaints, and the Federal Highway Administration, pursuant to its statutory authority to prescribe reasonable and just tolls,[1] scheduled adjudicatory hearings for the purpose of permitting interested parties to submit evidence on the reason-

ableness and justness of the toll schedule. Following the conclusion of these hearings and a decision by an Administrative Law Judge, the Administrator found that the toll schedule was unjust and unreasonable, and instituted a new schedule lowering the tolls to the pre-April, 1972 levels.

The Authority then filed a complaint in the United States District Court for the Eastern District of Pennsylvania seeking a declaratory judgment and a permanent injunction against the enforcement of the rate schedule which the Administrator had prescribed. Shortly thereafter, representatives of the Authority met with the Administrator in Washington to discuss the impact of the impending energy crisis upon the Authority and to consider a revised toll schedule which would be responsive to the fuel shortage. As a result of these meetings, the Administrator agreed to stay his previous order lowering the tolls and to permit the Authority to initiate, on an interim basis, the increased tolls which it wished to charge. In exchange, the Authority agreed to withdraw its pending lawsuit, and the action was subsequently dismissed without prejudice.

Following this favorable decision by the Administrator, hearings on the new tolls were reopened. An Administrative Law Judge again determined that the tolls charged by the Authority were unjust and unreasonable, and recommended that they be lowered. After considering the recommended decision of the Administrative Law Judge, the Administrator issued his final opinion and order in which he concluded that the Authority's toll schedule was unjust and unreasonable. As a result, he directed the implementation of a new schedule reducing tolls in each major category.

The Authority then instituted an action in the New Jersey district court seeking to review the Administrator's order. Following the district court's affirmance of the

---

1. Section 503 of the General Bridge Act, 33 U.S.C. § 526, provides that tolls charged for transit over any interstate bridge "shall be reasonable and just." The power to prescribe reasonable rates, formerly vested in the Secretary of Transportation, has been delegated to the Federal Highway Administrator. 49 C.F.R. § 1.48(i)(2).

agency determination,[2] the Authority appealed. It contends, *inter alia*, that the Administrator's decision is not supported by substantial evidence on the record and is not the product of reasoned decision-making.

We note at the outset that all parties to this proceeding agree, and the district court and Administrator found, that a reasonable and just toll is one which would allow the Authority "to achieve a return [sufficient] to support its total activities, including the operation of the bridges, the PATCO rapid transit system, and the World Trade Division, and provide sufficient coverage for financings." 403 F.Supp. at 1125. Disagreement among the parties centers on whether the evidence supports the Administrator's finding that the reduced tolls would provide sufficient revenue to finance these activities. It is the Authority's position that the toll schedule imposed by the Administrator fails to provide for its so-called "post-coverage" expenses—those budgeted activities which are financed after bond service requirements are met. The Administrator responds that the tolls which it has prescribed were designed to produce an amount in excess of the bond requirements and that this excess sum would be sufficient to meet any post-coverage expenses which arise.

The opinion of the Administrator is devoted almost exclusively to a determination of the toll rates which the Authority must charge in order to meet its bond service obligations. Relying on the Authority's financial statement for the calendar year 1974 and on its projected traffic counts through 1978, the Administrator determined that the rates set forth in his opinion would provide bond coverage in excess of the minimum which the Authority had covenanted to maintain.[3] While acknowledging that a reasonable and just toll is one which would allow the Authority to support its total activities, in addition to providing sufficient coverage for its financial commitments, the Administrator apparently regarded any sums in excess of the exact bond requirements as "excess revenue" which would provide a more than adequate cushion for any additional undertaking or expenses.[4]

However, in reaching his conclusion, the Administrator made no findings as to the estimated cost of these post-coverage expenses. Nor did he determine whether the revenues generated by his toll schedule would satisfy these expenses after the bond requirements had been met. Hence, we can find no basis beyond mere speculation supporting the Administrator's conclusion that the toll schedule set forth in his opinion will sustain the Authority's "total activities". If, as the Authority contends, the deficits of PATCO, expenses of the World Trade Division, capital budget expenditures and various litigated damage claims exceed the amount remaining after satisfaction of the Authority's debt service obligations, then the Administrator's toll schedule will not accomplish its stated purpose of providing the Authority sufficient revenue to support its "total activities".

> As a reviewing court, it is our task to "assure that the agency has given reasoned consideration to all the material facts and issues. This calls for insistence that the agency articulate with reasonable clarity its reasons for decision, and identify the significance of the crucial facts." *Greater Boston Television Corp. v. FCC*, 143 U.S.App.D.C. 383, 444 F.2d 841, 851 (1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).

However, the Administrator's failure to make specific findings as to post-coverage

---

**2.** The district court's decision is reported at 403 F.Supp. 1117 (D.N.J.1975).

**3.** The district court defined "coverage" as "the ratio of net revenues available for bond service to the Authority's bond service obligations." 403 F.Supp. at 1132 n. 40. It found that the Authority had covenanted through bond inden-ture agreements to provide net revenues equal to at least 120 per cent of the aggregate bond service for each year (1.2 coverage).

**4.** We are not called upon to determine the extent to which the Administrator may limit the Authority's use of toll generated revenues to subsidize its other activities.

expenses and as to whether the excess revenue after payment of the Authority's bond requirements would adequately cover these expenses has rendered us incapable of exercising our judicial review function. *See, Meadville Master Antenna Inc. v. FCC,* 443 F.2d 282 (3d Cir. 1971). We therefore conclude that on the basis of the present decision of the Administrator the order lowering tolls cannot be sustained.

Accordingly, the judgment of the district court will be vacated, and the district court instructed to retain jurisdiction but remand the case to the Administrator so that he may supplement his opinion by making specific and itemized findings on this record as to the Authority's post-coverage expenses and its ability to meet these expenses on the basis of the revenue derived from the Administrator's toll schedule. Although the Authority moves to supplement the record to include its 1976 proposed budget, its motion will be denied in view of the need for a prompt and limited reconsideration rather than a reopening of the record. In order to maintain the status quo and avoid needless administrative expense and confusion accompanying another—possibly temporary—rate adjustment, we further direct the district court to order that the present schedule remain in effect pending the Administrator's reconsideration of the matter,[5] unless the Administrator fails to supplement his opinion with the findings described above within 30 days from the date of the district court's remand order.

---

**5.** We are not called upon to determine the manner in which the district court should proceed in the event the Administrator reaches a determination other than the one presently under review.