AUTOMOBILE CLUB OF NEW YORK,
INC. and AAA Clubs of New
Jersey, Plaintiffs,

v.

William M. COX, Administrator, Federal
Highway Administration, and Brock Adams, Secretary, United States Department of Transportation and the Port
Authority of New York and New Jersey,
Defendants.

No. 77 Civ. 5493(MP).

United States District Court,
S. D. New York.

Feb. 2, 1978.

Kissam, Halpin & Genovese, New York
City, for plaintiffs, by Anthony S. Genovese, New York City.

Robert B. Fiske, Jr., U. S. Atty., S. D. N.
Y., New York City, for Cox, Adams and
Dept. of Transp., by Richard J. Weisberg,
Asst. U. S. Atty., New York City and Lawrence J. Roth.

Patrick J. Falvey, New York City, for defendant Port Authority, by Joseph Lesser, New York City.

## OPINION

POLLACK, District Judge.

The Automobile Club of New York and the AAA Clubs of New Jersey as plaintiffs herein have applied for a preliminary injunction in this declaratory judgment suit to restrain the PA (New York and New Jersey Port Authority) from collecting and disbursing and to impound the increases in the tolls it has levied for use of its four interstate bridges since 1975. The increased tolls were authorized by the Federal Highway Administrator pursuant to jurisdiction and authority granted by the General Bridge Act of 1906, 33 U.S.C. § 494 (1970 ed.). The decision of the Administrator is assailed as an abuse of discretion and authority, unsupported by substantial evidence and contrary to the constitutional rights of the plaintiffs.

The defendants are William M. Cox, the Federal Highway Administrator, Brock Adams, the Secretary of the United States Department of Transportation, in their official capacities, and the PA. The defendants are cross-moving for dismissal of the complaint pursuant to Rule 12(b)(6) or alternatively Rule 56 of the Federal Rules of Civil Procedure.

Jurisdiction herein is posited on 5 U.S.C. §§ 701–06; 28 U.S.C. §§ 1331(a), 1361, and 2201–02.

The Government concedes that 28 U.S.C. § 1331(a) supplies an appropriate jurisdictional basis for this Court's review of the Administrator's decision, while the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701, et seq. frames the scope of the plaintiffs' remedy. Conversely, the Government submits that the complaint fails to state a basis of jurisdiction that would permit this Court to adjudicate the claims against the PA. This suggestion is predicated on the absence of a showing by the plaintiffs that the amount in controversy exceeds $10,000. While this is not required in the claims against the Government officers, it allegedly is a requirement of 28 U.S.C. § 1331(a) for jurisdiction against the PA.

For the reasons appearing hereafter, the motion for a preliminary injunction and relief incidental thereto will be denied and the cross motion of the defendants William M. Cox, Administrator, and Brock Adams, Secretary, to dismiss the complaint against them for failure to state a claim upon which relief can be granted or in the alternative for summary judgment in favor of the said defendants will be granted. The PA's motion to dismiss the suit will be denied.

The PA was established by an interstate compact between the states of New York and New Jersey and Congress gave its assent thereto in 1921. 42 Stat. 174 (1921). The PA is required by the laws of the two states to pool the surplus revenues of all of its facilities. N.Y.Unconsol.Laws § 7002 and N.J.S.A. 32:1–142.

With consent of Congress obtained on March 2, 1925, the PA built and operates the four interstate bridges connecting New York and New Jersey. The George Washington Bridge spans the Hudson River from Fort Lee, New Jersey, to 178th Street in New York City. The Bayonne Bridge connects Port Richmond, Staten Island, New York, with Bayonne, New Jersey. Both of those bridges were opened for traffic in 1931. The Goethals Bridge, at Howland Hook, and the Outerbridge Crossing at Tottenville, also connect Staten Island respectively with Elizabeth and Perth Amboy, New Jersey and were opened for traffic in 1928.

All four bridges were constructed under the provisions of the General Bridge Act of 1906, 33 U.S.C. § 494 (1970 ed.) which requires that the tolls for transit over them shall be "reasonable and just". Jurisdiction to prescribe the rates of such tolls was originally granted to the Secretary of the Army. This function was later transferred to the Secretary of Transportation by 49 U.S.C. § 1655(g)(6)(B) who has, in turn, delegated this authority to the Federal Highway Administrator, 49 CFR § 1.48(i)(1) (1976) (the Administrator hereafter).

Effective May 1975, the PA increased its tolls by fifty percent on the four bridges except that bus tolls were not raised and a carpool discount for week-day traffic was instituted. These increases were the first increases of tolls in almost fifty years since the bridges were opened for traffic in 1928 and 1931 respectively. The rate base on which the PA was permitted by the Administrator to calculate the return sought by the toll schedules includes a reasonable rate of return on the PA investment in the bridges, the direct operating expense and debt service of the bridge facilities and also of certain of the interstate non-bridge facilities of the PA, i. e., the Hudson and Lincoln Tunnels, the Port Authority Trans-Hudson Railroad (PATH) and two bus terminals.[1]

The rate of return permitted to be applied to the PA's net investment reflected in the rate base employed was a ceiling of 6.5 percent and no question is raised herein as to the reasonableness thereof. The controversy before the Court concerns the inclusion in the rate base of the non-bridge facilities mentioned.

The Federal Highway Administrator decided on August 9, 1977 after due deliberation on an evidentiary hearing conducted pursuant to 49 CFR Part 310 by an Administrative Law Judge (ALJ hereafter) that the existing toll schedules adopted by the PA on April 10, 1975 effective May 5, 1975 were properly calculable on a base including the interstate non-bridge facilities mentioned above and as so calculated were reasonable and just and were the legal rate to be demanded and received for transit over the bridge crossings.

The Administrator's decision rejected the ALJ's recommendation that a finding be made that the tolls were not reasonable and just because the rate base included the net investment of the PA non-bridge interstate transit facilities. The ALJ had recommended but the Administrator rejected the suggestion that, as matter of law, the PA is

not allowed to use revenues derived from bridge toll collections for any purposes other than those directly related to the operation of the bridges.

It is not disputed here and the Administrator has found on substantial evidence that the disputed tolls are both fair to the users of the bridges and compare favorably to tolls applicable to river crossings elsewhere in the vicinity.

The Administrator correctly observed that

If, . . . net operating revenues do not exceed a proper rate of return on the proper investment base, the tolls producing those revenues may in proper circumstances be sustained as reasonable and just.

There is no contemporaneous legislative history accompanying the 1906 Bridge Act which spells out what Congress intended as the components of a rate base on which to fix reasonable and just bridge tolls. The congressional mandate was simply that tolls be "reasonable and just".

Consequently, the presumed congressional intent must be sought elsewhere.

Section 503 of the General Bridge Act of 1946, 33 U.S.C. § 526, as does Section 4 of the Bridge Act of 1906, requires tolls for interstate bridges to be "reasonable and just". However, the 1946 Act expressly limits the use of toll revenues to specific bridge-related purposes. Sec. 506, 33 U.S.C. § 529. No similar limitation was contained in the 1906 Bridge Act. In 1952, in approving certain amendments to the interstate compact creating the Delaware River Port Authority, Congress authorized the Delaware Authority to use its bridge tolls for purposes of financing other transit-related facilities. Pub.L.No.574, 82d Cong., 2d Sess. § 3, 66 Stat. 747 (1952) and specifically exempted the Delaware Authority from the limitation on the use of bridge tolls to bridge-related purposes mandated by the 1946 Bridge Act.

---

1. Additionally the PA operates facilities not included in the rate base authorized on which bridge tolls were fixed, e. g., two truck terminals, seven marine terminals, four airports, two helioports and the World Trade Center.

The legislative history of that enactment likened the policies of the New York and the Delaware Authorities of using toll revenues to finance related transit activities and described such policies as desirable and necessary. H.R.Rep.No.2293, 82d Cong., 2d Sess. at 3 (1952). Significantly, the House Report, *Id.,* at 3, states:

> Having consented to a similar development of the port of New York, the only other port lying within the territory or jurisdiction of two States, the Congress has ample precedent for approving this legislation which provides the only practicable means for developing the Delaware River Port district as a vitally necessary center of commerce.

Thus, in 1952, using the PA as a model, Congress authorized the Delaware Authority to use bridge and related non-bridge facilities in its rate base to establish tolls on a bridge subject to a reasonable and just test.

In reaching a conclusion on the investment to be considered in the rate base, the Administrator analogized the problem to principles of regulatory law in the utility field. The property used and useful for the convenience of the four bridges was held by the Administrator to consist of the non-bridge facilities mentioned above. Those facilities act to support and improve traffic flow and to facilitate transit into and out of New York, to relieve congestion that would otherwise overburden the bridges and thus to provide fast, safe, efficient and convenient transportation to and from this area. Those non-bridge and bridge facilities, as the PA contends, are an integrated interdependent transportation system to facilitate mass movements across and under waters in question. Each of the elements of the system has a relationship to the use of and congestion in any other. Each provides nearly interchangeable transit options into and out of New York. The factual record before the Administrator was found by him sufficiently to demonstrate that the discontinuance of one would add to congestion on the other. The factor of congestion and its avoidance on the bridges is unquestionably of significance and materiality to the bridges as the Administrator's findings show in detail. The cost of providing other transit facilities—supporting facilities—that divert traffic that would otherwise pile up and embarrass the bridges is a cost related to operation of the bridges.

Additionally, the supporting facilities together with the bridges were planned and have been operated by the PA as an integrated, interdependent transportation system for the cross-water movement. In 1931, New York and New Jersey enacted the Bridge and Tunnel Unification Act which transferred control of the Holland Tunnel to the PA, provided for the construction of the Lincoln Tunnel, and placed the same under the PA's aegis. 65 McKinney's §§ 6501–25 (1961). The legislation provided that the bridges and the tunnels were to be grouped as a single unified operation for financing and pooling of reserve funds. *Id.* §§ 6504, 7002. Indeed, early deficit operations of the bridges were made up with revenues from the successful Holland Tunnel. *See U. S. Trust v. New Jersey,* 431 U.S. 1, 7, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

■ Consequently, the Administrator correctly decided that inclusion of the capital invested in each of the related facilities, bridge and non-bridge, was an appropriate standard on which to apply the rate of return to derive the tolls. The tolls from the bridges properly do and should contribute towards the financial support of the other related transit facilities. The Administrator's conclusion that because the tolls are reasonable and just they provide a reasonable and just return and therefore cannot be faulted was well within his competence and legal authority.

The case law does not suggest any different conclusion. *Burlington v. Turner,* 336 F.Supp. 594 (S.D.Iowa 1972), *aff'd as modified,* 471 F.2d 120 (8th Cir. 1973) merely points up the impropriety of utilizing unrelated facilities in the rate base. In that case, the tolls were raised to pay increases in salaries of the city's police and firemen. Such financial needs, unrelated to the

bridge, could not properly ground a reasonable and just bridge toll.

On the contrary, where the tolls would allow the authority to support its total related and integrated activities, including bridges, rapid transit, and the World Trade Division, the rate of tolls met the criterion of a reasonable and just toll and permitted pooling of the revenues for the support of the overall system. *DRPA v. Tiemann,* 403 F.Supp. 1117 (D.N.J.1975) *vacated and remanded,* 531 F.2d 699 (3d Cir. 1976), *on remand,* 421 F.Supp. 142 (D.N.J.1976).

Accordingly, the plaintiffs have failed to raise a serious question going to the merits of the determination by the Administrator or to demonstrate probability of success. It is evident that Congress has been mindful of the financial integration of the PA's numerous facilities and has heretofore permitted the use of bridge revenues for related non-bridge purposes where a just and reasonable toll has to be determined. It has approved the use of revenues for multi-facility public authorities and the tolls approved by the Administrator are based on a computation which is legal.

■ The settled rule in this Circuit is that in order to obtain preliminary injunctive relief a litigant must meet the burden of demonstrating either a combination of probable success on the merits and the possibility of irreparable injury, or, in the alternative, that it has raised serious questions going to the merits and that the balance of hardships tips decidedly in the plaintiff's favor. *Sonesta International Hotels Corp. v. Wellington Assoc.,* 483 F.2d 247, 250 (2d Cir. 1973). In either event, plaintiffs must make "a clear showing of the threat of irreparable harm . . . since equity cannot intervene where there is an adequate remedy of law." *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1359 (2d Cir. 1976). The contentions of the plaintiffs meet neither of these standards and the preliminary injunctive relief sought herein must be denied.

■ Moreover, the plaintiffs seek to have adjudicated a single issue, legal in nature, which the record before the Court indicates is devoid of merit. Accordingly, the Government is entitled to judgment dismissing the complaint in pursuance of its motion under Rule 12(b)(6), or alternatively, Rule 56, Fed.Rules of Civ.P.

■ Initially, the PA presented papers in opposition to plaintiffs' motion for preliminary injunction; it did not file a cross motion seeking the dismissal of the complaint with those papers. Several weeks thereafter it moved for an order dismissing the complaint in pursuance of Rule 12(b)(6), or alternatively, Rule 56 of the Federal Rules of Civil Procedure relying solely apparently on the opposition to the plaintiffs' motion for a preliminary injunction and submitting no additional papers in support of the requested dismissal. In their reply memorandum, the plaintiffs charge that figures produced by the PA show that included in the rate base are non-bridge items that were not approved by the Administrator in his order and decision, *e. g.,* losses incurred in an extraneous office building operation, the World Trade Center. It is therefore unclear on the present submission whether the PA has used a rate base which has a component or components beyond those authorized by the Administrator.

Accordingly, it seems inappropriate to dismiss the complaint as against the PA until the facts are established in the record. Moreover, the PA has not challenged the Court's jurisdiction as to it for failure of the plaintiffs to show a jurisdictional amount in excess of $10,000. If indeed there is such an infirmity, it should be separately presented and briefed.

Plaintiffs' motion for a preliminary injunction is denied. The cross motion of the defendants William M. Cox, Administrator, and Brock Adams, Secretary, to dismiss the complaint is granted. The cross motion of the PA to dismiss the complaint is denied.

SO ORDERED.