**DIVISION 580, AMALGAMATED TRANSIT UNION, AFL–CIO, Appellant,**

v.

**CENTRAL NEW YORK REGIONAL TRANSPORTATION AUTHORITY et al., Appellees.**

**No. 1184, Docket 77–7116.**

United States Court of Appeals, Second Circuit.

Argued April 28, 1977.

Decided May 31, 1977.

**660**

Barry M. Shulman, Axenfeld, Webb, Marshall, Bersani & Scolaro, Syracuse, N. Y., for appellees.

Jules L. Smith, Blitman & King, Syracuse, N. Y. (Bernard T. King, James R. LaVaute, Syracuse, N. Y., of counsel, Earle W. Putnam, Gen. Counsel, Washington, D. C., Amalgamated Transit Union), for appellant.

Before MANSFIELD, Circuit Judge, SMITH, Chief Judge,* and PALMIERI, District Judge.**

* Of the United States District Court for the District of Montana, sitting by designation.

PALMIERI, District Judge:

This appeal arises from the denial of a motion for a preliminary injunction sought by the appellant, Division 580, Amalgamated Transit Union, AFL–CIO (the "Union"), to restrain the appellee, Central New York Regional Transportation Authority (the "Authority") from conducting or participating in fact-finding proceedings pursuant to the impasse resolution procedures set forth in New York State's Taylor Law, N.Y. Civil Service Law § 209 (McKinney 1973).

The action is the result of a labor dispute between the Union and the Authority as to whether the Union has a right to submit to compulsory arbitration its new collective bargaining agreement with the Authority or whether the Union is subject to the Taylor Law and its impasse resolution procedures. After a hearing in the District Court for the Northern District of New York, Judge Lloyd F. MacMahon denied the Union's application for a preliminary injunction on the grounds that the Union had failed to make a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the Union. We affirm.

### I. Background Facts

The Authority is a public benefit corporation created by statute in 1970. N.Y. Public Authorities Law § 1328 (McKinney Supp. 1976–77). Its purposes are to continue, develop, and improve transportation services in certain counties in New York, § 1329, and it has relatively broad statutory powers to fulfill those purposes, §§ 1331, 1332, including authority to enter into collective bargaining agreements with labor representatives duly elected by the employees of the Authority. § 1331(A)(13).

On November 1, 1976, a two-year collective bargaining agreement between the Union and three subsidiary corporations of the Authority expired. That agreement provided for grievance arbitration, but not for

** Of the United States District Court for the Southern District of New York, sitting by designation.

interest arbitration (*i.e.*, arbitration over the terms of a new collective bargaining agreement). On March 11, 1975, the parties entered into an agreement pursuant to section 13(c) of the Urban Mass Transportation Act, 49 U.S.C. § 1609(c) (the "13(c) Agreement") which contained no expiration date. Section (9) of the 13(c) Agreement provided, in pertinent part, that

In the case of any labor dispute where collective bargaining does not result in agreement, the same may be submitted at the written request of either party to a board of arbitration. . . .

.     .       .         .         .

. . . The term "labor dispute" shall be broadly construed and shall include any controversy concerning wages, salaries, working conditions or benefits, including . . . the making or maintenance of collective bargaining agreements, the terms to be included in such agreements, the interpretation or application of such agreements, the adjustment of grievances, any claim, difference, or controversy arising out of or by virtue of any of the provisions of this agreement for the protection of employees affected by the Project.

The Authority entered into the 13(c) Agreement as a condition to its receiving financial assistance from the Federal Government under the Urban Mass Transportation Act for certain projects it had undertaken. Section 13(c) of the Act requires that recipients of federal assistance make "fair and equitable arrangements . . . to protect the interests of employees affected by such assistance." [1]

Prior to the expiration of the collective bargaining agreement, the parties met to negotiate a new agreement. These negotiations, however, were unsuccessful, and, thus, on October 25, 1976 the parties jointly requested the appointment of a mediator by the New York State Public Employment Relations Board ("PERB"). PERB is the state agency responsible for the administration of the Taylor Law. Section 209 of the Taylor Law, Civil Service Law § 209 (McKinney 1973), contains a three-step dispute resolution procedure to be followed in the event that PERB determines that an impasse exists in collective negotiations.

A PERB mediator was appointed pursuant to the first step of the procedure, and negotiations with the assistance of the mediator proceeded without success. When the impasse continued, the Authority requested that PERB appoint an advisory fact-finder to make recommendations for the resolution of the dispute (step two of the Taylor Law procedure). The fact-finder was appointed on December 1, 1976. On December 13, 1976 the Union advised the Authority by letter that it would not proceed to fact-finding and that it intended to submit the contract dispute to arbitration pursuant to the terms of the 13(c) Agreement. Notwithstanding the Union's position with respect to the 13(c) Agreement, the Authority continued to press for fact-finding. A fact-finding session was scheduled for January 24, 1977, but adjourned at the request of the attorneys for the Union until February 9, 1977. On February 7, 1977 the Union obtained *ex parte* a temporary restraining order staying fact-finding until a hearing could be held on February 15, 1977. At the Authority's request, Judge MacMahon advanced the hearing to February 9, 1977, at which time he denied the

1. On July 23, 1975 the American Public Transit Association, the National Amalgamated Transit Union, and the Transit Workers Union of America entered into an agreement pursuant to section 13(c) (the "National 13(c) Agreement") to which the Authority and the Union became parties in August 1975. The National 13(c) Agreement provides for the preservation and continuation of all rights, privileges, and benefits under collective bargaining agreements, including the right to arbitrate labor disputes, so long as those agreements are in effect. It also contains a provision for arbitration of disputes arising with respect to the protections afforded by the Agreement and its interpretation, application, and enforcement. The Authority contends that the National 13(c) Agreement supersedes the 13(c) Agreement while the Union contends that the latter is incorporated in the former. In our view, the National 13(c) Agreement stands on substantially the same footing as the 13(c) Agreement and adds no additional support to the Union's position on this appeal.

Union's motion for a preliminary injunction, vacated the stay, and directed that fact-finding proceed forthwith. Due to scheduling problems, fact-finding was set down for March 9, 1977.[2] On March 7, 1977, however, the Union moved before Judge MacMahon for a stay of fact-finding pending this appeal. Judge MacMahon denied the motion for a stay, and this Court affirmed that decision on March 15, 1977.

## II. *Standards for Issuance of a Preliminary Injunction*

■ A preliminary injunction is an extraordinary remedy which will not be granted except upon a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the relief. *Diversified Mortgage Investors v. U. S. Life Title Ins. Co.,* 544 F.2d 571, 576 (2d Cir. 1976); *Sonesta Int'l. Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973); *Checker Motors Corp. v. Chrysler Corp.,* 405 F.2d 319, 323 (2d Cir.), *cert. denied,* 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

The Union contends that there is a clear probability that it will prevail on the merits, that it will suffer irreparable harm if the temporary injunction is not issued, and that the Authority will suffer no harm from the injunction. These arguments are not supported by the record.

## A. *The Union's Case on the Merits*

To prevail on the merits, the Union will have to establish that the 13(c) Agreement's arbitration clause applies to the present labor dispute and commits the parties to interest arbitration; assuming that it applies, that the Union did not waive its rights under the 13(c) Agreement by participating in the Taylor Law mediation process; and

that the Authority is not immune from suit under the Eleventh Amendment. It is not the Court's role at this time to make a final determination of these issues, and the present record is insufficient to permit such a determination to be made. It is evident, however, that the Union has failed to make a clear showing of probable success or to raise sufficiently serious issues going to the merits to make them a fair ground for litigation.

■ This Court is not persuaded that there is any substantial likelihood that the Union will prevail in its argument that the 13(c) Agreement commits the Authority to interest arbitration. The purpose of the 13(c) Agreement, as evidenced by the statute pursuant to which it was entered into, 49 U.S.C. § 1609(c), is to protect the interests of employees affected by projects to which the Federal Government contributes financial assistance. The statute's legislative history makes it reasonably clear that § 13(c) was intended to preserve the rights of employees under existing collective bargaining agreements and to maintain the *status quo* with respect to the employer's obligation to bargain collectively, not to create new rights for the employees or enhance existing ones. 88 Cong.Rec. 5670–5677 (1963). In view of this statutory purpose, it is unlikely that the Union will succeed at a trial on the merits in demonstrating that the 13(c) Agreement committed the parties to interest arbitration when no prior agreement between the parties ever provided for it.

Even accepting the Union's argument with respect to the application of the 13(c) Agreement, there is a substantial probability that the District Court, after a trial, would determine that the Union waived any rights it had under the 13(c) Agreement by participating in the Taylor Law procedures.[3] This was the District Court's view of the merits after its hearing on the

2. On February 10, 1977 the Authority moved to dismiss the complaint or, in the alternative, for summary judgment. On February 16, 1977, the Union cross-moved for summary judgment. These motions were denied after a hearing on February 21, 1977.

3. The Union contends that the issue of waiver is one which must be submitted to arbitration. For purposes of this appeal we need not reach this issue.

preliminary injunction. We have not treated that view as a determination with respect to the issue of waiver but have considered it only insofar as it bears upon the probability of the Union's success on the merits.[4]

### B. The Alleged Irreparable Injury to the Union

█ Wholly apart from the probabilities of success on the merits, the Union has failed to demonstrate that it will suffer irreparable injury if the Taylor Law procedures are permitted to continue. The Union contends that it is being irreparably harmed as a result of its loss of collective bargaining rights and its right to arbitration under the 13(c) Agreement. It further asserts that if the labor dispute between the parties cannot be voluntarily resolved through the fact-finding process the Authority will impose a settlement on the Union pursuant to the Taylor Law.

It is not clear, however, that the Union is entitled to the collective bargaining and arbitration rights under the 13(c) Agreement, the loss of which it claims constitutes irreparable harm.[5] With respect to the possibility that the Union might be subjected to a settlement imposed by the Authority, this Court is not persuaded that the potential injury is so substantial or immediate that injunctive relief is warranted at this time. The parties are presently engaged in the advisory fact-finding process which may result in a voluntary resolution of the dispute.[6] If the parties fail to resolve their differences through fact-finding, the Authority is empowered under the Taylor Law to "take such action as it deems to be in the public interest, including the interest of the public employees involved." N.Y. Civil Service Law § 209(3)(e)(iv) (McKinney 1973). Thus, if this dispute reaches the stage at which the Authority may act unilaterally, the Authority is obliged to take the interests of the public employees into account in resolving it. Under the circumstances, it would be inappropriate for this Court to assume that the Authority would impose a resolution which would cause irreparable injury to the Union, in derogation of its statutory obligations.

The Union has also failed to demonstrate that the balance of hardships tips decidedly in its favor. The hardship, if any, to the Union in continuing with the advisory fact-finding process is minimal. The hardship to the Authority and to the public at large, on the other hand, is potentially great. As the District Court observed, there is "a decided public interest in the expeditious settlement through the Taylor Law of this labor dispute in the bus transportation industry of Central New York to the end that the riding public will not be confronted with inconvenience".

█ A District Court's denial of temporary injunctive relief will be reversed only on a showing of a clear abuse of discretion. *Checker Motors Corp. v. Chrysler Corp., supra.* We hold that the District Court acted within its appropriate discretion in refusing to enjoin the fact-finding process under the Taylor Law.[7]

Affirmed.

---

4. The Authority also contends that the Union will not prevail on the merits because the Authority is immune from suit under the Eleventh Amendment. Although we are not persuaded by the Authority's argument, we need not resolve the issue for purposes of this appeal.

5. The Union's claim that it will be irreparably harmed by being required to proceed under the Taylor Law is further undermined by the fact that it did not assert its alleged right to arbitrate the dispute under the 13(c) Agreement until after it had voluntarily participated in mediation under the Taylor Law and after a fact-finder had been appointed.

6. The Union's claim that it is suffering irreparable harm by virtue of the time and expense involved in fact-finding is without merit. *Cf. Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974).

7. The Authority contends that this appeal is moot because the parties have proceeded with fact-finding with some degree of success. We disagree. Although fact-finding is underway, it is unclear whether it will be wholly successful in resolving this dispute.