**In re Joseph NEWMAN, Debtor.**

**Ira S. GREENE, as Trustee of Joseph Newman, Debtor, Plaintiff,**

**v.**

**Joseph NEWMAN, Andrew Charla, J. E. S. Equities, Inc., Susan Newman, Allan Newman and Nelstad Trucking & Contracting Corp., Defendants.**

**Bankruptcy No. 79 B 20051.
80 Adv. 2047.**

United States Bankruptcy Court, S. D. New York.

Oct. 22, 1980.

trol of the court. Specifically, the trustee requests an order staying the defendant, Andrew Charla, from transferring or otherwise disposing of certain New Rochelle Manufacturing Co., Inc. promissory notes and any payment of principal and interest which he receives or is entitled to receive pursuant to such notes until further order of this court, and an order staying the defendant, J. E. S. Equities, Inc., from transferring or disposing of a promissory note of the defendant, Nelstad Trucking & Contracting Corp., and any payment of principal or interest it receives pursuant to such note until further order of this court. The facts upon which the trustee's motion is based have been gleaned from the pleadings and the admissions of the debtor.

The trustee states that it would seriously prejudice the estate to allow the proceeds of the notes which are the subject of the adversary proceeding to be dissipated during the course of the action. He further states, that "the course of conduct exhibited in the facts already admitted in this proceeding present a sound argument for protecting the proceeds of the remaining ... notes from dissipation [and that] placing the proceeds of the notes in an interest bearing account will protect the interests of both [p]laintiff and defendant in these funds."

An involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against the debtor on November 24, 1979. The order for relief was entered on January 2, 1980. On September 11, 1979 in an action entitled *Chrysler Credit Corporation v. Fair–Way Chrysler Plymouth Inc., Joseph Newman, Elaine Newman, Joseph Spagnola and Constance Spagnola* (78 C. 5802, S.D.N. Y.), a verdict was rendered in favor of Chrysler against the debtor in the amount of $86,704. All of the counterclaims alleged by the debtor in the action were dismissed.

On or before September 17, 1979 the debtor assigned promissory notes due him from the New Rochelle Manufacturing Corp. to Andrew Charla, his father–in–law.

Ira S. Greene, Trustee, New York City.

Solomon Abrahams, Hartsdale, N. Y., for debtor.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This motion arises out of an adversary proceeding commenced by the trustee in bankruptcy to recover certain alleged fraudulent transfers proscribed by Code § 548.[1] The trustee in bankruptcy has invoked Rule 65 of the Federal Rules of Civil Procedure, as adopted in Bankruptcy Rule 765, for an order directing that the proceeds from certain promissory notes be placed in an interest bearing account under the con-

---

1. That action is entitled *Ira S. Greene v. Joseph Newman, Andrew Charla, J. E. S. Equities, Inc.,* *Susan Newman, Allan Newman and Nelstad Trucking & Contracting Corp.,* 80 ADV 2047.

The notes represented the balance due the debtor, as of September 17, 1979, from the New Rochelle Manufacturing Corp. for the purchase of the debtor's interest in the New Rochelle Manufacturing Corp., for a payment due pursuant to a noncompetition agreement executed by the debtor and for loans made by the debtor to the New Rochelle Manufacturing Corp. The trustee alleges that as of September 17, 1979 the payments due on the New Rochelle notes, including interest, totaled approximately $93,337. On September 17, 1979, Andrew Charla paid the debtor $54,500 for the transfer of the New Rochelle notes.

The payment schedule for the New Rochelle notes transferred to Andrew Charla by the debtor is as follows:

| Due Date of Note | Face Amount | Amount paid to Charla including principal and interest on notes whose due date has passed |
|---|---|---|
| September 30, 1979 | $3,750 plus interest at 4% from 1/1/76 | $4,320.00 |
| December 31, 1979 | $3,750 plus interest at 4% from 1/1/76 | $4,358.34 |
| March 31, 1980 | $3,750 plus interest at 4% from 1/1/76 | $4,395.84 |
| June 30, 1980 | $3,750 plus interest at 4% from 1/1/76 | $4,433.75 |
| September 30, 1980 | $3,750 plus interest at 4% from 1/1/76 | |
| December 31, 1980 | $3,750 plus interest at 4% from 1/1/76 | |
| September 30, 1979 | $5,208.33 plus interest at 4% from 1/1/76 | $6,000.00 |
| December 31, 1979 | $5,208.33 plus interest at 4% from 1/1/76 | $6,053.24 |
| March 31, 1980 | $5,208.33 plus interest at 4% from 1/1/76 | $6,105.32 |
| June 30, 1980 | $5,208.33 plus interest at 4% from 1/1/76 | $6,157.98 |
| September 30, 1980 | $5,208.33 plus interest at 4% from 1/1/76 | |
| December 31, 1980 | $5,208.33 plus interest at 4% from 1/1/76 | |
| March 31, 1980 | $5,208.33 plus interest at 4% from 1/1/76 | |
| June 30, 1981 | $5,208.33 plus interest at 4% from 1/1/76 | |
| September 30, 1981 | $5,208.33 plus interest at 4% from 1/1/76 | |
| December 31, 1981 | $5,208.33 plus interest at 4% from 1/1/76 | |
| July 1, 1980 | $6,900 plus interest at 7.5% from 1/1/76 | $8,473.59 |

The Chrysler action resulted in the docketing of a judgment against the debtor, on September 19, 1979, for $86,704 plus interest at the rate of 6% per annum from October 31, 1977. The interest granted in the judgment totaled $9,537.44. This increased the amount of the judgment to $96,241.44. On September 28, 1979, a certificate of incorporation was filed with the Secretary of State for New York on behalf of J. E. S. Equities, Inc. The sole officers and shareholders of J. E. S. are the children of the debtor. On or about November 15, 1979 the debtor transferred $40,000 to J. E. S. in exchange for a promissory note of $40,000 on which there would be no payment or principal or interest until November 15, 1982. The note provided that the principal balance of $40,000 would be paid at the rate of $100 per month commencing November 15, 1982 and the interest would be paid at the rate of 7% per annum also commencing November 15, 1982. This would result in a payout period of 36 years and 11 months with respect to the principal indebtedness. On or about March 5, 1980 J. E. S. transferred $50,000 to the Nelstad Trucking & Contracting Corp. in exchange for a $50,000 promissory note due on June 5, 1981.

The debtor admits that the $40,000 transferred by the debtor to J. E. S. on November 15, 1979 was included in the $50,000 transferred to Nelstad on March 5, 1980.

The debtor admits that on the date he transferred the New Rochelle promissory notes to Andrew Charla the present saleable value of his assets remaining after the transfer totaled less than the amount that was required to pay his probable liability on his existing debts as they became absolute and matured if it is assumed that the debts included the Chrysler debt in the amount of at least $86,704.

The debtor admits that on the date he transferred $40,000 to J. E. S. Equities, Inc., the present saleable value of the debtor's assets remaining after the transfer was made totaled less than the amount that was

required to pay his probable liability on his existing debts as they became absolute and mature.

## DISCUSSION

Rule 65 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 765 of the Rules of Bankruptcy Procedure, provides for the imposition of preliminary injunctions. Although Rule 65 does not set out the factors to be considered when determining whether or not to issue a preliminary injunction, the courts have established the standards.

"The settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973). Also see, *Columbia Pictures Indus., Inc. v. American Broadcasting Companies, Inc.*, 501 F.2d 894 (2d Cir. 1974); *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977); *Division 580, Amalgamated Transit Union, AFL–CIO v. Central N. Y. Regional Transportation Authority*, 556 F.2d 659 (2d Cir. 1977).

The trustee, plaintiff in this action, seeks to avoid as fraudulent transfers the conveyances made by the debtor to the defendants, Andrew Charla and J. E. S. Equities, Inc. Section 548(a) of the Bankruptcy Code, 11 U.S.C. § 548(a), states in part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;[2]

To prevail on the merits, the trustee will have to establish that the debtor's transfer of the property in which he had an interest was made within one year before the date of the filing of the petition and that the transfer was made with the actual intent to hinder, delay or defraud a creditor to whom the debtor became indebted on or after the date such transfer occurred, or that the debtor received less than a reasonably equivalent value in exchange for such transfer and that the debtor was insolvent on the date that such transfer was made or that the debtor became insolvent as a result of such transfer. 11 U.S.C. § 548(a)(1), (2)(A)(B)(i).

The debtor has admitted: (1) He had an interest in the New Rochelle notes transferred to Andrew Charla and the money transferred to J. E. S. Equities, Inc. (2) The transfers took place within one year before the date of the filing of the bankruptcy petition. (3) The debtor became indebted to the Chrysler Credit Corporation on September 19, 1979, a few days after the Charla transfer and about one month before the J. E. S. transfer, by virtue of the docketed judgment of $96,241.44. (4) On the date he transferred the New Rochelle notes to Charla the present saleable value of his assets remaining after the transfer totaled less than the amount that was required to pay his probable liability on his existing debts as they became absolute and matured

2. Although the trustee also relies upon § 278 of the N. Y. Debtor and Creditor Law, a discussion of that section is not necessary for the determination of this motion.

if it is assumed that the debts included the Chrysler debt in the amount of at least $86,704, i. e., the Charla transfer in light of the Chrysler judgment, rendered the debtor insolvent within the meaning of 11 U.S.C. § 101(26)(A). (5) On the date he transferred $40,000 to J. E. S., the present saleable value of the debtor's assets remaining after the transfer totaled less than the amount that was required to pay his probable liability on his existing debts as they became absolute and mature, i. e., the debtor was insolvent when he made the J. E. S. transfer.

Therefore, the issues with respect to the merits of the trustee's action are whether the debtor transferred the notes and money with the actual intent to hinder, delay or defraud the Chrysler Credit Corporation, or alternatively, whether the debtor received less than a reasonably equivalent value in exchange for the property transferred.

### ACTUAL INTENT

■ A transaction prior to bankruptcy which results in the transfer of a debtor's property between members of a family does not ipso facto compel the conclusion that the transfer was fraudulent. *Chichester v. Golden*, 204 F.Supp. 634 (S.D.Cal.1962). However, "such transactions are generally subjected to close scrutiny when challenged by the trustee, and the relationship of the parties in conjunction with other circumstances often makes a trustee's case compelling notwithstanding the absence of direct evidence of fraud." 4 Collier on Bankruptcy, 548–37, ¶ 548.02 (15th ed. 1980).

■ In this case the debtor transferred notes worth $93,337 to his father–in–law, Andrew Charla, in exchange for $54,400 within 6 days after a jury rendered a verdict against the debtor in the amount of $86,704. It has been admitted by the debtor that this transfer rendered him insolvent in light of the verdict and subsequent judgment. In addition, within one month after the entry of the Chrysler judgment, the debtor transferred $40,000 to J. E. S. Equities, Inc., a corporation incorporated approximately ten days after the entry of the

judgment whose sole officers and shareholders are the debtor's children, for a $40,000 promissory note with a payout period of 36 years 11 months which is not to commence until November 15, 1982.

"It is not the Court's rule at this time to make a final determination of these issues ... [but it] is evident, however, that the [trustee] has [made] a clear showing of probable success on the merits [and has] raise[d] sufficiently serious issues going to the merits to make them a fair ground for litigation." *Division 580, Amalgamated Transit Union, AFL–CIO v. Central New York Regional Transportation Authority*, 556 F.2d at 662.

### RECEIPT OF LESS THAN A REASONABLY EQUIVALENT VALUE

The debtor transferred a note worth $93,337 with a final payment date of December 31, 1981, in exchange for $54,500. He also transferred $40,000 in exchange for a $40,000 note whose payments are not to commence until November 15, 1982, and whose pay–out period will last 36 years 11 months. It is evident that the trustee has made a clear showing of probable success on the issue of whether the debtor received less than a reasonably equivalent value for the transfer of the notes and money.

### IRREPARABLE INJURY TO THE ESTATE

The trustee contends that to allow the payment of the New Rochelle notes to Charla and the Nelstad note to J. E. S. Equities would seriously prejudice the estate since the payments, the subject of the trustee's action, might be dissipated. The sole argument made on the part of Charla and J. E. S. was that an injunction would cause them to lose the use of the money until final determination of the issues raised in the trustee's complaint.

Since the trial in this matter will be scheduled for a time not later than the final payment date on the notes and the proceeds will be maintained in an interest bearing account the balance of hardships tip decid-

edly in favor of the trustee. Indeed, the trustee has demonstrated that the estate may suffer irreparable injury, the dissipation of the funds, if the injunction is not imposed.

### CONCLUSIONS OF LAW

1. The trustee has demonstrated with respect to both Andrew Charla and J. E. S. Equities, Inc. the probable success on the merits of his fraudulent transfer action and the possible irreparable injury to the estate if the preliminary injunction is not imposed.

.2. This court directs the proceeds of the aforementioned notes to be put in an interest bearing account under the control of this court.

SUBMIT ORDER ON NOTICE.