**TOTAL VIDEO, INC., Plaintiff,**

**v.**

**Benson MILLER and Tele-Bingo Communications International Corporation, Defendants.**

**No. 81 Civ. 5790 (KTD).**

United States District Court, S. D. New York.

Nov. 19, 1981.

Solin & Breindel P. C., Michael Goldberg, New York City, for plaintiff; Daniel R. Solin, New York City, of counsel.

Mr. Benson Miller, pro se, and for defendants.

## MEMORANDUM & OPINION

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Total Video, Inc. ["Total Video"] has charged the defendants Benson Miller and his company Tele-Bingo Communications International Corporation ["Tele-Bingo"] with breach of contract and fraud arising out of a joint venture to produce a television bingo show. This instant motion seeks to compel defendants to assign to Total Video all "trademark, copyright and related rights" (Plaintiff's Notice of Motion for a Preliminary Injunction) to various television bingo game shows. Plaintiff is also asking this court to preliminarily and per-manently enjoin defendants from interfering with Total Video's production of such a television bingo game show and from separately producing, marketing, or selling such a show. Jurisdiction is based on diversity of citizenship.

## FACTS

The dispute arises out of an agreement entered into between Total Video and Benson Miller, the president of Tele-Bingo Communications, Inc., on or about April 21, 1981, for the "Sales, Production & Syndication of the Federal Copyrighted 'Tele-Bingo' Home Participation Game Show." (Exhibit A, Plaintiff's Notice of Motion for a Preliminary Injunction). Total Video invested $100,000 in the joint venture, $75,000 of which was directly transferred to Benson Miller. These funds were to be used for initial production costs of the venture. The contract also provided in pertinent part:

.   .   .   .   .

(A) TOTAL VIDEO, INC. WILL BE THE EXCLUSIVE "MARKETING/SYNDICATOR" FOR "TELE–BINGO" (TV "CELEBRITY BINGO") ON A "PERPETUITY BASIS" AT 45% (FORTY FIVE PERCENT), "ACROSS THE BOARD" ON ALL PROFIT FACTORS OF "TELE–BINGO" FOR $100,000.00, "ADVANCE OPERATING CAPITAL" TO THE "TELE–BINGO" COMMUNICATIONS INTERNATIONAL CORPORATION . . .

.   .   .   .   .

(C) IT IS AGREED THAT THE *$100,-000.00 WILL BE RETURNED TO* "TOTAL VIDEO, INC." *WITHIN 26 WEEKS,* (TWO 13 WEEK CYCLES) STARTING, JUNE 1st 1981 & THAT THERE WILL BE A "BONUS" TO TOTAL VIDEO, INC. OF $100,000.00, "THE FIRST YEAR OF 'TELE–BINGO' OPERATION" . . .

.   .   .   .   .

(G) *BEN MILLER WILL ASSIGN TO TOTAL VIDEO, INC., THE "TELE–BINGO" FEDERAL COPYRIGHTS, TRADEMARKS, WRITERS GUILD OF*

*AMERICA & OTHER LEGAL CREDEN-
TIALS & DOCUMENTS FOR "TELE-
BINGO" UNTIL THE $100,000.00 IS RE-
TURNED TO TOTAL VIDEO, INC.,
"WITHIN TWO 13 WEEK CYCLES"*
(Exhibit A, Plaintiff's Notice of Motion
for a Preliminary Injunction).

Total Video alleges that Benson Miller
and Tele-Bingo have breached the agree-
ment by failing to return advanced operat-
ing capital or to report to plaintiff any
expenditures, failing to assign the Tele-Bin-
go copyrights, trademarks and related
rights, and failing to request plaintiff's con-
sent prior to the release of any invested
monies (Affidavit of David DeBusschere,
September 17, 1981). The plaintiff also
claims to have invested significant amounts
of time and money in preparation of a
television bingo game show scheduled to be
aired shortly.

Benson Miller, in *pro se* responsive
"pleadings," claims to have made signifi-
cant efforts to produce the game show in
question by developing contacts with the
Golden Nugget Casino in Atlantic City,
New Jersey, and potential hosts, such as
Bert Parks and Tug McGraw, and by mak-
ing arrangements for additional financing.
He also alleges that Dave DeBusschere,
President of Total Video, continually failed
to lend promised support to the venture by
refusing to attend various events related to
the production and financial backing of the
show. Finally, Benson Miller accuses De-
Busschere and Total Video of attempting to
defraud him of his copyrights, trademarks
and related rights by, *inter alia*, making
arrangements to produce the show without
him.

PRELIMINARY INJUNCTION

In support for its motion for a prelimi-
nary injunction, plaintiff argues that it will
suffer irreparable injury in that it will be
unable to proceed with the show it has
produced without risking suit by Benson
Miller for copyright infringement. Plain-
tiff also contends that the continuing uncer-
tainty as to the ownership of the copy-
rights, trademarks and related rights is
hampering its ability to continue with the

venture and harming its good will. Finally,
it urges that defendants will not be harmed
since the injunction requested would merely
require them to perform as agreed to in the
contract.

"A preliminary injunction is an extraordi-
nary remedy which will not be granted
except upon a clear showing of either (1)
probable success on the merits and possible
irreparable injury, or (2) sufficiently serious
questions going to the merits to make them
a fair ground for litigation and a balance of
hardships tipping decidedly toward the par-
ty requesting the relief." *Division 580,
Amalgamated Transit Union, AFL-CIO v.
Central New York Regional Transportation
Authority,* 556 F.2d 659, 662 (2d Cir. 1977).
Plaintiff herein does not meet either stan-
dard for such an extraordinary remedy.

The papers before this court present sig-
nificant factual disputes and therefore, do
not establish plaintiff's probable success on
the merits. While plaintiff has alleged a
cause of action for breach of contract, there
are valid counter claims in defendant's
pleading. The validity of any of these
claims cannot be determined at this point.

Under the second prong of the prelimi-
nary injunction test, although there appear
to be serious questions addressed to the
merits, the hardships in this case do not tip
decidedly in favor of either party. As the
parties on both sides appear to have ex-
pended much energy and/or money in pro-
motion of this venture, it would be a hard-
ship to either party to allow the other to
proceed unilaterally prior to a full determi-
nation of their relative rights. While a
delay in the project might forestall poten-
tial profits to the plaintiff, the injunction
requested could strip the defendant of his
entire stake in the venture prematurely.
Accordingly, no injunction will issue until
there is a determination on the merits of
the parties' claims.

As plaintiff has not met the standards
required for the issuance of a preliminary
injunction, the instant motion is denied. It
will be required that Tele-Bingo Communi-
cations International Corporation be repre-
sented by an attorney. It is suggested that

the individual defendant also obtain counsel. All discovery is directed to be completed within 60 days of the date hereof. There will be *no* extensions.

SO ORDERED.